WALTER J. ROTHSCHILD, Judge.
|2New Era Development Corporation (“New Era”) brought the instant petition for partition by licitation against Soniya Dumas Robert, the administratrix of the *890 Succession of Joseph Farley Dumas, Sr. Defendant responded with an answer, re-conventional and third party demand, and then brought a motion for summary judgment which was granted by the trial court, dismissing plaintiffs petition. New Era now appeals from this judgment. We affirm.
In its petition, New Era alleged that Joseph Farley Dumas, Sr. died intestate on October 27, 2007, leaving two children: Joseph Farley Dumas, Jr. (hereinafter referred to as “Junior Dumas”) and Soniya Dumas Robert. At the time of his death, Mr. Dumas owned a piece of property in Jefferson Parish. The petition alleges that in 2008, prior to the opening of a succession and while representing himself to be Joseph Dumas, Sr., Junior Dumas executed a cash sale of this property to Tina and Tuan Dinh. The title closing agency, Southern Title, later learned of the misrepresentation and that Junior Dumas had no authority to sell a full interest in the subject property. Junior Dumas’ sister, Soniya Dumas Robert, [.¡subsequently opened succession proceedings in this matter in her capacity as administratrix.
Thereafter, on July 18, 2008, Tina and Tuan Dinh executed a Quitclaim Deed in favor of New Era Development Corporation in exchange for $38,881.50, thereby transferring their interest in the subject property to New Era. New Era alleges that following Mr. Dumas Sr.’s death, Junior Dumas had the authority to sell his undivided interest in the subject property and that as a result of this transaction, New Era by virtue of the Quitclaim Deed now owned the portion of the property that was lawfully sold by Junior Dumas. New Era sought a judgment to partition the subject property.
In response to this petition, Soniya Dumas Robert, in her capacity as adminis-tratrix of the Succession, filed a general answer to the allegations as well as a re-conventional and third party demand against several defendants: New Era, Southern Title, Joseph Farley Dumas, Jr., and Tina and Tuan Dinh. By this pleading, the Succession sought to have both the sale of the property from Junior Dumas to the Dinhs and the Quitclaim Deed executed by the Dinhs to New Era declared absolute nullities. The administra-trix also asked that the ownership of the property be returned to the Succession of Joseph Farley Dumas, Sr. The Succession also sought attorney’s fees and damages based on third party defendants’ acts of bad faith and negligence.
In September of 2011, the Succession brought a motion for summary judgment, seeking a declaration that both the May 16, 2008 sale of property and the July 18, 2008 Quitclaim Deed are absolute nullities, and a return of the property to its rightful owner, the Succession of Joseph Farley Dumas, Sr. New Era Development Corporation opposed this motion, and the matter was heard by the trial court on October 31, 2011. By judgment rendered the same day and ^signed on January 10, 2012, summary judgment was granted in favor of Soniya Dumas Robert, and the petition for partition filed by New Era was dismissed with prejudice, reserving the rights of all other parties. Further, the judgment declared that the May 16, 2008 Act of Sale and the July 18, 2008 Quitclaim Deed were absolute nullities and without civil effect.
New Era Development now suspensively appeals from this judgment, arguing that the trial court erred in declaring the Act of Sale and the subsequent Quitclaim Deed to be null, where Junior Dumas was legally authorized to sell his own interest in the subject property. Further, New Era contends that as it had no knowledge of the misrepresentations made by Junior Dumas, the sale was nevertheless enforceable *891 to transfer Junior Dumas’ undivided interest.
Relying on La. C.C. art. 938, New Era argues that Junior Dumas could exercise his rights of ownership prior to the qualification of the succession representative, and that such an exercise cannot be an absolute nullity. New Era argues that based on the principles of seizin, Junior Dumas acquired ownership of his share of his father’s estate at the death of Mr. Dumas, Sr., and that portion was lawfully sold to the Dinhs, notwithstanding Junior Dumas’ misrepresentation of his identity.
A copy of the Cash Sale at issue in this case was attached to the original petition brought by New Era. The document is dated May 16, 2008 and indicates a transfer of Lot 1, SQ1, Kings Manor S/D, 1101 Martin Drive, Marrero, LA 70072 by Joseph Farley Dumas, Sr. to Tina Dinh and Tuan Dinh for the contract price of $38,000.00. The signature of the seller appearing on the document is Joseph Farley Dumas, Sr. and the signature of the buyer is Tuan Dinh. The document was witnessed and notarized by George S. Ruppenicker of Southern Title.
| ¿Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
Although New Era argues that the contract should be interpreted to transfer only Joseph Dumas, Jr.’s interest in the property, we find no merit in this argument. New Era contends that even assuming Junior Dumas masqueraded as his father in signing the act of sale to the Dinhs, his signature is effective as his own and this was binding on him. We disagree.
A review of the Cash Sale clearly states that the seller is Joseph Farley Dumas, Sr., and does not indicate that the undivided interest of Junior Dumas was being transferred. The intent of the parties as determined on the face of the Cash Sale was to transfer Dumas, Sr.’s title and ownership of the property for the stated value, and no further interpretation may be made in search of the parties’ intent. We fail to find that the Cash Sale can be interpreted to transfer only an undivided interest in a subject property.
New Era next argues that the trial court’s ruling nullifying both transactions in this ease operates as a windfall for Junior Dumas and a detriment to New Era in the execution of the Quitclaim Deed. However, our review of the record supports the trial court’s ruling finding that both the Act of Sale and the Quitclaim Deed are absolute nullities.
A transfer of immovable property must be made by authentic act or by act under private signature. La. C.C. art. 1839. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. La. C.C. art. R1833. An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title. La. C.C. art. 1835.
There is no dispute in this ease that the signature affixed to the execution by the seller was a forgery and is by definition not authentic. The record indicates that the purported seller, Joseph Farley Dumas, Sr. died on October 27, 2007 and was not alive at the time of the execution of the sale of his immovable property on May 16, 2008. As such, the Cash Sale cannot qualify as an authentic act, and does not consti *892 tute full proof of the agreement it contains to transfer the immovable property. Because of the forgery, the Cash Sale likewise does not qualify as an act under private signature, and thus the sale did not operate to transfer the immovable property to the Dinhs. The Act of Sale executed on May 16, 2008 between Joseph Farley Dumas, Sr. and Tina and Tuan Dinh is therefore an absolute nullity.
As the transfer of the immovable property was without effect, the Dinhs did not attain any ownership rights or subsequently have the ability to sell, transfer or assign any rights or interest to the subject property to New Era in the Quitclaim Deed executed on July 18, 2008. Although New Era may have given consideration for this deed, the act is nevertheless a nullity as the Dinhs obtained no right or title to the property in the original Cash Sale. Thus, as the Quitclaim Deed is hereby found to be null and unenforceable, New Era will need to address its right to seek redress from any party or parties in a separate proceeding.
After review of the record herein, we find no error in the ruling of the trial court that the Act of Sale executed on May 16, 2008 and the Quitclaim Deed executed on July 18, 2008 are absolute nullities. Accordingly, the judgment of the trial court is hereby affirmed. New Era must bear all costs of this appeal.

AFFIRMED